IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**United States of America,**

        **Plaintiff,**

**v.**                                                    Case No. 03-20051-08-JWL

**Noe Espino,**

        **Defendant.**

## MEMORANDUM & ORDER

In 2004, a jury found defendant Noe Espino guilty of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine. In determining the Guidelines range, the PSR applied the murder cross-reference provision, pursuant to U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1(a), based on defendant's participation in the murder of Bruce Andrews, who had stolen drugs from the conspiracy and cooperated with the police. The first-degree murder cross-reference resulted in a base offense level of 43 for the drug conspiracy charge. With no other adjustments to the base offense level, the advisory Guidelines range was life imprisonment. The court applied the cross-reference and sentenced defendant to life imprisonment. The Tenth Circuit affirmed defendant's conviction and sentence on appeal and, in 2008, this court denied defendant's § 2255 motion. This matter is presently before the court on defendant's motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 677).[1] As will be explained,

---

[1] Defendant filed a prior motion for compassionate release in November 2020, and the court denied the motion in January 2021. The government's response to the present motion is largely based on its assertion that the motion constitutes an untimely motion to reconsider. Based on intervening legal developments in the Tenth Circuit that govern how district courts should approach such

the motion is granted in part and denied in part. The motion is granted to the extent defendant seeks a sentence reduction, and the court reduces defendant's sentence to 360 months imprisonment. The motion is denied to the extent defendant seeks immediate release or seeks a greater sentence reduction.

The Tenth Circuit has endorsed a three-step test for district courts to utilize in connection with motions filed under § 3582(c)(1)(A). *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). Under that test, a court may reduce a sentence if the defendant administratively exhausts[2] his or her claim and three other requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id*. A court may deny compassionate-release motions when any of the three prerequisites is lacking and need not address the others. *Id*. at 1043. But when a district court grants a motion for compassionate release, it must address all three steps. *Id*. As will be explained, the court concludes that defendant has come forward with extraordinary and compelling reasons warranting a reduction and that a reduction to 360 months imprisonment is consistent with the applicable § 3553(a) factors.

**Extraordinary and Compelling Reasons**

---

motions, and the fact that defendant has included new arguments to be considered in combination with arguments he previously asserted, the court declines to treat the motion as one to reconsider.
[2] The government does not dispute that defendant has satisfied the statute's exhaustion requirement.

In his motion, defendant seeks a sentence reduction based on a combination of factors that he contends together constitute an extraordinary and compelling reason for early release. Primarily, defendant points to his age at the time of the offense, the length of his sentence (life without the possibility of parole) and his extraordinary rehabilitation and maturation while he has been in custody.[3] As will be explained, the court finds that defendant has established an extraordinary and compelling reason for a sentence reduction. Specifically, the court finds that a reduction is warranted in light of the unique combination of defendant's young age at the time of his offense, the length of the sentence he received, and overwhelming evidence of defendant's outstanding rehabilitation and reformation while in custody. *See United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) (affirming district court's finding of "extraordinary and compelling reasons" based on its individualized review of all the circumstances and its conclusion "that a combination of factors" warranted relief, including the defendant's young age at the time of sentencing and rehabilitation while in custody).

Defendant's life sentence was based solely on the application of the murder cross-reference provision, pursuant to U.S.S.G. §§ 2D1.1(d)(1) and 2A1.1(a), based on defendant's participation in the murder of Bruce Andrews. Mr. Andrews owed a drug debt to the conspiracy or, more precisely, to Carlos Portillo-Quezada. At that time, defendant was 20 years old and working as an "enforcer" under Mr. Portillo-Quezada, who was several years older than defendant. The presentence report indicates that defendant had been instructed by Mr. Portillo-Quezada to locate

---

[3] Defendant also relies on circumstances relating to the COVID-19 pandemic in support of his motion. But he does not direct the court to any evidence or even any health conditions that would support immediate release as a result of the pandemic. And to the extent the court grants a reduction to 360 months, it does so without regard to defendant's argument about the pandemic.

3

Mr. Andrews and "arrange for them to be together with him in a vehicle." PSR ¶ 35. The evidence at trial indicated that defendant, at the direction of Mr. Portillo-Quezada, lured Mr. Andrews to the scene of the murder, watched as Mr. Portillo–Quezada killed him with an assault weapon, helped clean the car after the murder, and took it to a different location where it was burned. Like defendant, Mr. Portillo-Quezada proceeded to trial and also received a life sentence.[4]

In the context of analyzing motions for sentence reductions under § 3582(c)(1)(A), courts have recently started considering whether a defendant's age at the time of an offense bears on that defendant's culpability. The most thorough example of this consideration is found in *United States v. Ramsay*, 538 F. Supp.3d 407 (S.D.N.Y. 2021), in which Judge Rakoff set forth certain relevant features of youth that courts should consider when determining whether extraordinary and compelling circumstances exist for a sentence reduction. These features include an adolescent offender's immaturity, susceptibility, salvageability, and dependency. *Id*. at 416. The *Ramsay* court's decision was based on sound, recent scholarship relating to adolescent brain development as well as Supreme Court cases relating to youth in sentencing. *See id.* at 416-17 (citing Montgomery, 577 U.S. at 206-13. While the court need not repeat the key aspects of the Ramsay opinion, the court finds that opinion highly relevant to the facts of this case and is persuaded that the relevant features of adolescence described in *Ramsay* likely influenced defendant's conduct in this case.

---

[4] Defendant proceeded to trial to face a near-certain life sentence despite the fact that the government offered him a 30-year plea deal prior to trial. That plea offer was the subject of a successive § 2255 petition filed by defendant, but the Tenth Circuit declined to authorize the petition.

In light of the timing of adolescent brain development, it is clear to the court that defendant, at just twenty years of age, necessarily possessed a lack of maturity and underdeveloped sense of responsibility that made him more likely to make egregious mistakes and engage in poor decisionmaking. *See id.* at 417-20 (discussing studies on brain development and the role of immaturity in actions by adolescents and young adults). The court is also convinced that defendant was highly susceptible to and dependent on the influence of his older peer, Carlos Portillo Quezada. *See id.* at 420-22 (explaining the greater susceptibility of younger defendants to malign peer influences); *see also United States v. Cruz*, 2021 WL 1326851, at *7 (D. Conn. Apr. 9, 2021) (based on "persuasive and well-founded" scientific evidence, court found "because 18-year-olds are still developing in terms of maturity, impulse control, ability to resist peer pressure, and character, they are less than fully blameworthy for criminal conduct"); *United States v. Morris*, 2022 WL 3703201, at *8 (D. Conn. Aug. 26, 2022) (fact that defendant was in "late adolescence" at time crime was committed favored sentenced reduction). And Mr. Portillo-Quezada exerted that influence in a way that resulted in the life sentence here—by instructing defendant to bring Mr. Andrews to him so that he could kill him.

The *Ramsay* court also recognized another significant reason "why youth matters in sentencing"—the "character of younger defendants is generally still evolving." *United States v. Golding*, 2022 WL 2985014, at *3 (S.D.N.Y. July 27, 2022) (citing *Ramsay*, 538 F. Supp. 3d at 422). As Judge Rakoff summarized in a subsequent opinion, "young offenders' worst actions do not necessarily demonstrate incorrigibility or predict their continuing misconduct." *Id.* at *3. This case presents a great example of that principle and demonstrates that a life sentence in this context is too long. At the time the court sentenced defendant, it "could only guess" at what type

of person defendant might become. Now, the court has a long track record to review that allows it to assess that very question. As will be explained, that track record reinforces the conclusion that defendant's youth at the time of his offense weighs in favor of a sentence reduction. *See Ramsay*, 538 F. Supp. 3d at 422 (discussing young offenders' salvageability).

Over the past several years, defendant has amassed a collection of over 30 letters from corrections officers, teachers in the BOP, religious services employees in the BOP and other inmates who all express enthusiastic support for defendant. From these letters, the court discerns two repeating themes—defendant continually engages in efforts to rehabilitate himself in all facets of his life and defendant possesses strong leadership skills that he uses for the betterment of the inmate population at Tucson USP. The letters from corrections officers offer a consistent picture of a man who has worked very hard—and continues to work hard—on his education, his spiritual development and his overall mental health. According to these officers, defendant is a "model inmate who strives to improve daily"; is "willing to participate in all programming;" is "someone who continues to improve himself educationally, occupationally, and spiritually" and has a "wonderful sense of self-awareness" in terms of his need for continued improvement. Corrections officers and other staff members consistently describe defendant as a model inmate, a respected, "exceptional" mentor among other inmates, and a true leader who motivates other inmates to avoid negative influences in prison. With respect to his work habits, BOP staff indicate that defendant is incredibly responsible and never requires additional instruction or reminders to complete tasks. Staff members state that defendant maintains a "professional demeanor" at all times; that he maintains a "strong work ethic"; that he approaches his job "gladly"; and that he takes great pride in his work. One religious services assistant in the BOP writes that it was "an honor to work with"

defendant. A teacher describes how defendant sought out extra tutoring so that he could pass the GED on his first attempt—and he succeeded.

Other letters shed some light on the rarity of such accolades. One senior corrections officer writes that he has "great confidence that Mr. Espino will be the success that Corrections Officers want to see from released inmates" and that he is "someone who took the time to learn from his mistakes and became a better person for it." A supervisory chaplain writes that in over 22 years as a correctional chaplain, she has seldom if ever felt more strongly about an inmate's readiness for early release. A staff chaplain writes that "few inmates are as dedicated and caring" as defendant and that defendant has a "bright future . . . as a productive member of society." Another states that defendant "has completely earned my trust." Defendant's challenge program coordinator writes that defendant's maturity is a "community asset."

Defendant has also submitted letters from his parents and a niece and nephew. These letters are significant to the court because they demonstrate that defendant has worked to maintain positive relationships with his family members despite facing a life sentence. According to defendant's mother, he continues to call her twice each week. But the unbiased letters from prison staff members who have spent countless hours with defendant over the last number of years are truly remarkable in the court's opinion. *See United States v. Douglas,* 2021 WL 214563, at *8 (D.D.C. Jan. 21, 2021) ("Courts have found letters from prison staff—'written by the unbiased people who have spent more time with [defendant] than anyone else—to be powerful evidence of his rehabilitation.'" (quoting *United States v. Rodriguez*, 492 F. Supp. 3d 306, 312 (S.D.N.Y. 2020))).

7

Defendant's prison disciplinary record also demonstrates his rehabilitation. He has not had any serious infractions during his incarceration and none at all in over ten years. The court finds this record exceptionally rare, "especially for a defendant who, serving a life without parole sentence, has no motivation to earn good time credit by avoiding inappropriate conduct." See United States v. Cruz, 2021 WL 1326851, at *13 (D. Conn. Apr. 9, 2021); United States v. Lugo, 2022 WL 732153, at *8 (E.D.N.Y. Mar. 11, 2022) (defendant's "commendable behavior is especially significant because his life sentence eliminated any extrinsic motivation to earn good time credit and to acquire new skills and knowledge") (citations omitted). In addition to his clean disciplinary record, defendant has completed the Challenge Program and then stayed in the program to assist other participants in it. As another district court has acknowledged, completion of this program is "particularly noteworthy." *See Cruz*, 2021 WL 1326851, at *13 (describing the program as "an intensive cognitive-behavioral treatment program" that is focused on "the reduction of antisocial peer associations; promotion of positive relationships; increased self-control and problem solving skills; and development of pro-social behaviors" and places a "special emphasis on violence prevention"). The court also finds significant defendant's role as a Suicide Prevention Companion to other inmates, who clearly have a great deal of respect for defendant. And of course, defendant has completed a litany of educational and therapeutic programming while in custody.

For the foregoing reasons, the court finds that defendant's young age at the time of his offense, the length of the sentence he received, and overwhelming evidence of defendant's outstanding rehabilitation and reformation while in custody, in combination, constitute extraordinary and compelling reasons for a sentence reduction.

**Applicable Policy Statements**

The Sentencing Commission's most recent policy statement regarding sentencing reductions under § 3582(c)(1) is set forth in U.S.S.G. § 1B1.13. The policy statement expressly applies to motions filed by the Director of the BOP and was promulgated before the enactment of the First Step Act and, thus, before Congress authorized defendants to file their own motions. *McGee,* 992 F.3d at 1049 ("Although Congress's enactment of the First Step Act and its amendment of § 3582(c)(1) should have prompted the Sentencing Commission to revise the policy statement set forth in § 1B1.13, the Sentencing Commission has, to date, been unable to do so."). The Tenth Circuit has concluded, then, that the policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants. *Id*. at 1050. In this case, defendant—not the BOP—filed his motion for compassionate release. Thus, the existing policy statement is not applicable to the motion and the court's discretion to consider whether any reasons are extraordinary and compelling is not constrained by § 1B1.13 or the Application Note to that policy statement. *Id.*

**Section 3553(a) Factors**

Lastly, the court finds that a sentence of 360 months is an appropriate § 3553(a) sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (requiring the consideration of applicable § 3553(a) factors if court finds that extraordinary and compelling reasons warrant reduction). The § 3553(a) factors include (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect

for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a)(1)–(6).

As noted earlier, defendant's life sentence was driven solely by the first-degree murder cross-reference. Without question, defendant's role in the murder of Bruce Andrews (who had stolen drugs from the conspiracy) was an extremely serious offense that warrants a very substantial sentence. While defendant did not kill Mr. Andrews, he lured Mr. Andrews to the scene of the murder, watched as his co-defendant Carlos Portillo–Quezada killed him with an assault weapon, helped clean the car and took it to a different location where it was burned. But there is evidence that defendant participated in that offense under pressure from Mr. Portillo-Quezada and that he was taking orders from Mr. Portillo-Quezada when he lured Mr. Andrews to the scene. Mr. Portillo-Quezada was clearly the worst offender in this multi-defendant case, and the court is persuaded that defendant's subordinate role to Mr. Portillo-Quezada warrants a lesser sentence than the life sentence Mr. Portillo-Quezada received. Moreover, the record of this case reveals that the government offered defendant a 30-year plea deal prior to trial.[5] See Doc. 600, p. 9 ("Defendant is not entitled to be reoffered the 30-year plea deal that he rejected before trial."). This demonstrates that the government, prior to trial, believed that defendant's conduct did not necessarily warrant the same life sentence that Mr. Portillo-Quezada received and that a sentence

---

[5] In a successive § 2255 motion filed in January 2013, defendant contended that his counsel rejected this offer without consulting him and without explaining that he would be subject to the first-degree murder cross reference. The Circuit declined to authorize the successive petition.

of 360 months would achieve the purposes of sentencing. While the court acknowledges that the government had an incentive to offer a plea with a lower penalty in the hopes of avoiding a trial, the government nonetheless has a responsibility to ensure that any plea offer it makes is reasonable and will satisfy the goals of sentencing. Thus, the offer of 360 months is a strong indication of what the government considered to be a reasonable sentence. For these reasons, the court is convinced that a still-substantial sentence of 360 months is sufficient but not greater than necessary to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public. *See United States v. DeJesus*, 2022 WL 1154251, at \*7 (S.D.N.Y. Apr. 19, 2022) (granting motion for compassionate release over government's objection in part because the government, sixteen years earlier, had offered the defendant a five-year plea deal, indicating that it then considered five years to be a reasonable sentence).

The court also believes that a sentence of 360 months is appropriate given defendant's personal history and characteristics, as described in more detail above. He has been assigned a "minimum risk" recidivism level; he has demonstrated extraordinary personal growth while in custody; and by numerous accounts he is a model inmate and a mentor to other inmates. Despite facing life in prison with no possibility of release, the record does not reveal any disciplinary incidents in more than 10 years. Indeed, the court finds defendant's post-sentencing conduct remarkable, as evidenced by the numerous letters of support that defendant has received from prison staff attesting to his character. The support that defendant has received from prison staff is, in this court's experience, unprecedented.

In sum, the evidence before the court strongly contraindicates a sentence of life imprisonment and suggests to the court that defendant can and will be a productive member of

11

society upon release. Applying the § 3553(a) factors here, the court reduces defendant's sentence to 360 months. And in doing so, the court notes that district courts across the country, in the context of § 3582(c)(1)(A) motions, have granted reductions from life to a term of years, including in cases involving murder. *See United States v. Morris*, 2022 WL 3703201 (D. Conn. Aug. 26, 2022); *United States v. Ramsay*, 538 F. Supp. 3d 407 (S.D.N.Y. 2021); *Cruz*, 2021 WL 1326851; *United States v. Perez*, 2021 WL 837425 (D. Conn. Mar. 4, 2021); *United States v. Rodriguez*, 492 F. Supp. 3d 306 (S.D.N.Y. 2020); *United States v. Rios*, 2020 WL 7246440 (D. Conn. Dec. 8, 2020).

In *Morris*, for example, the court reduced the defendant's life sentence to 360 months despite the fact that the defendant had shot and killed a man who had stolen money from him. 2022 WL 3703201, at *1. In reducing the defendant's life sentence, the court emphasized that the defendant had been pressured to commit murder by someone else; that he was only 18 years old at the time of the murder; that he had shown subsequently growth in custody; and he played a subordinate role to a co-defendant who had been involved with multiple murders and who had his sentence reduced to 450 months. *Id*. at *12. The court also highlighted precedent within the Second Circuit for reducing life sentences for serious crimes. *Id*. Similarly, in *Ramsay*, the defendant was convicted of murder in aid of racketeering and sentenced to life imprisonment at 18 years old. 538 F. Supp. 3d at 409. The defendant shot and killed two innocent bystanders while attempting to kill the leader of a rival gang. *Id*. Relying on the defendant's compelling rehabilitation and maturation in custody, as well as the defendant's age at the time of the killings, the court reduced the life sentence to 360 months. *Id*. at 428.

Consistent with these well-reasoned decisions, the court concludes that a reduction from life imprisonment to a term of 360 months is appropriate. *See also Cruz*, 2021 WL 1326851 (reducing life sentence to time served where defendant spent 31 years in custody for killing two gang members when he was pressured to do so; court emphasized compelling evidence of rehabilitation and fact that the defendant was 18 years old at time of killings); *Rodriguez*, 492 F. Supp. 3d 306 (sentence of prisoner serving life sentence for murder of government informant was reduced to 30 years in light of evidence, among other things, of "total" and "remarkable" rehabilitation).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) (doc. 677) is granted in part and denied in part. The motion is granted to the extent defendant seeks a sentence reduction, and the court reduces defendant's sentence to **360 months imprisonment**. The motion is denied to the extent defendant seeks immediate release or seeks a greater sentence reduction.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's term of supervised release will begin immediately upon his release from the Bureau of Prisons. **All other provisions of the judgment dated February 28, 2005 shall remain in effect.**

**IT IS SO ORDERED.**

Dated this 26th day of September, 2022, at Kansas City, Kansas.

s/ John W. Lungstrum  
John W. Lungstrum  
United States District Judge